IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TINA TURNER and JAMES GARNER )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>THE CITY OF CHICAGO, ILLINOIS, )<br>a Municipal Corporation; and POLICE )<br>OFFICERS: L.H. SALDANA, STAR # )<br>10315, and T.M. NORRIS, STAR # 16143; )<br>and MB FINANCIAL BANK, )<br>)<br>Defendants. )<br>) | No. 12 C 9994 |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On March 15, 2013, Plaintiffs Tina Turner and James Garner (collectively, "Plaintiffs") filed a seven-count Second Amended Complaint against Defendants the City of Chicago, Officers Saldana, Officer Norris (collectively, the "City Defendants"), and MB Financial Bank ("MB") (collectively, "Defendants"). (R. 22, SAC.) In the Second Amended Complaint, Plaintiffs allege the following: violations of the Fourth and Fourteenth Amendments for False Arrest and Imprisonment against Officers Saldana and Norris (the "Officers") (Count I); malicious prosecution against MB (Count II); an Equal Protection class-of-one claim against the City of Chicago (Count III); a Substantive Due Process claim against the City of Chicago (Count IV); conspiracy under 42 U.S.C. § 1983 against all Defendants (Count V); a claim under 42 U.S.C. § 1981 against MB (Count VI); and a claim for indemnification against the City of Chicago (Count VII). The City Defendants and MB filed separate motions to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (R. 27, City

MTD; R. 30, MB MTD.) Because the motions present overlapping issues, the Court addresses both motions to dismiss in this Opinion.

## BACKGROUND

Plaintiffs Tina Turner ("Turner") and James Garner ("Garner") are a married couple who owned a residence at 5114 S. Damen in Chicago, Illinois during the events at issue. (SAC ¶ 7.) In 2004, Defendant MB Financial Bank approached Turner and Garner about purchasing their house. (*Id*. ¶ 12.) Turner and Garner refused to sell. (*Id*.) According to Plaintiffs, because of their refusal, they experienced a "long string of harassing actions by MB . . . including but not limited to closing their bank accounts, causing trash to be placed on their property on a weekly basis, and making baseless complaints to the City whenever Garner attempted to make repairs to his property, and damaging Garner's property." (*Id*.) Plaintiffs allege that MB also colluded with the City of Chicago, which resulted in false arrests and prosecutions of Turner and Garner. (*Id*. ¶ 13.) Specifically, City of Chicago police officers arrested Turner on December 15, 2010 for alleged property damage to MB's security cameras. (*Id*. ¶ 8.) The prosecutor dismissed the charges against Turner in August 2011. (*Id*. ¶ 10.) On December 16, 2010, a City of Chicago police officer went to Garner's resident and threatened him. (*Id*. ¶ 9.) In May 2011, prosecutors charged Garner with battery to an employee of MB. (*Id*. ¶ 11.) The charges were dismissed in June 2011. (*Id.* ¶ 11.) According to Plaintiffs, video tape evidence shows that neither Garner nor Turner committed the crimes for which they were charged. (*Id*. ¶¶ 8, 11.)

**LEGAL STANDARD**

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff,* 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). "In evaluating the sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer,* 649 F.3d 610, 614 (7th Cir. 2011).

**ANALYSIS**

**I.  Count I - Fourth and Fourteenth Amendment Violations under 42 U.S.C. § 1983: False Arrest and Imprisonment against the Officers**

In Count I, Plaintiffs allege that the Officers falsely arrested Turner on December 15, 2010,[1] and detained her for eight hours prior to arraignment, without probable cause or a

---

[1] The City Defendants do not raise a statute of limitations defense to this count, and Plaintiffs are not required to plead facts in the complaint to anticipate and defeat affirmative defenses. *See Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009). The Court notes, however, that Section 1983 claims in Illinois have a two-year statute of limitations and Plaintiffs filed their

3

warrant, "based on complaints of crimes that allegedly took place over two years prior, for which video evidence existed negating culpability on Turner's part." (SAC ¶¶ 8, 15, 17.) Section 1983 provides a cause of action against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]" 42 U.S.C. § 1983. Plaintiffs have alleged that the Officers acted under the color of state law. (SAC ¶ 17.)

To prevail on a cause of action for false arrest and imprisonment,[2] a plaintiff must show that he was restrained or arrested by the defendant, and that the defendant acted without reasonable grounds to believe that an offense was committed by the plaintiff. *Poris v. Lake Holiday Prop. Owners Ass'n*, 368 Ill. Dec. 189, 203, 983 N.E.2d 993 (Ill. 2013). "Probable cause to justify an arrest exists if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Abbott,* 705 F.3d at 714 (citing *Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir. 2012); *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979); *Beck v. Ohio*, 379 U.S. 89, 91, 85 S .Ct. 223, 13 L. Ed. 2d 142 (1964)).

Here, the City Defendants argue that probable cause defeats Count I. (City MTD at 4-5.) Plaintiffs, however, specifically allege that the Officers arrested Turner without probable cause.

---

initial Complaint on December 16, 2012. *Turley v. Rednour*, No. 11-1491, 2013 WL 3336713, at *3 (7th Cir. 2013).

[2] "The elements of false arrest and false imprisonment are the same." *Fricano v. Chicago White Sox, Ltd.,* No. 1-10-1978, 2012 WL 6950243, at *14 (Ill. App. Ct. Feb. 10, 2012).

4

(*See, e.g.,* Compl. ¶¶ 15, 17.) Plaintiffs specifically allege that the Officers "falsely arrested Turner and caused her to be detained for eight hours before being bound to appear in court for arraignment wrongly, as no probable cause existed for her arrest, as it was based on complaints of crimes that allegedly took place over two years prior, for which video evidence existed negating culpability on Turner's part." (*Id.* ¶ 15.) Viewing the facts in the light most favorable to Plaintiffs, and making all inferences in their favor, as the Court must do at this stage, they have sufficiently stated a claim for false arrest and imprisonment. *See Gardunio v. Town of Cicero,* 674 F. Supp. 2d 976, 986 (N.D. Ill. 2009). The Court, therefore, denies the City Defendants' motion to dismiss as to Count I.

## II.     Count II - Malicious Prosecution against MB

In Count II, Plaintiffs allege that "MB maliciously, willfully and wantonly made false statements to police in order to effect the arrest and prosecution of Plaintiffs for property damage and battery, which it knew they did not commit, in retaliation against them for refusing to sell MB their house." (SAC ¶ 20.) Under Illinois law, to prevail on a malicious prosecution claim a plaintiff must show: "(1) the defendant commenced or continued an original criminal or civil judicial proceeding; (2) the proceeding terminated in favor of the plaintiff; (3) there was an absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Hurlbert v. Charles*, 238 Ill. 2d 248, 255, 345 Ill. Dec. 68, 938 N.E.2d 507 (Ill. 2010) (citing *Swick v. Liautaud*, 169 Ill. 2d 504, 215 Ill. Dec. 98 N.E.2d 1238 (Ill. 1996)).

As a threshold matter, Plaintiffs have alleged that the prosecutions at issue terminated in their favor. (SAC ¶¶ 10, 11.) Plaintiffs, however, fail to allege that these prosecutions

5

proceeded without probable cause. Indeed, at most Plaintiffs allege that the Officers lacked probable cause to arrest and detain Turner – though not Garner – as discussed in Count I, but they do not make even conclusory allegations about whether probable cause existed for the prosecutions at issue to proceed. Furthermore, Plaintiffs did not allege that MB took an "active part in instituting criminal proceedings" against either Turner or Garner. *See Logan v. Caterpillar, Inc.*, 246 F.3d 912, 922 (7th Cir. 2011) ("Illinois law requires that, in order to commence or continue a criminal proceeding, the defendant must have initiated the criminal proceeding or his participation in it must have been of so active and positive a character as to amount to advice and cooperation.") (internal quotation marks omitted); *Reno v. City of Chicago*, No. 10 C 6114, 2012 WL 2368409, at *6 n. 2 (N.D. Ill. June 21, 2012); *Rodgers at* 348 ("[L]iability extends to all persons who played a significant role in causing the prosecution of the plaintiff, provided all of the elements of the tort are present."). Rather, Plaintiffs merely allege that the Officers arrested Turner based on "complaints," without identifying MB as the party making the complaints or undercutting their validity. (SAC ¶ 15.) Indeed, Plaintiffs do not link any complaints by MB with those allegedly resulting in Turner's arrest. Plaintiffs only allege that MB made "baseless complaints to the City whenever Garner attempted to make repairs to his property" and "various baseless administrative complaints," which do not relate to Turner's arrest for property damage. (SAC ¶¶ 12. 13.) These allegations also do not relate to Garner's arrest for battery. In fact, Plaintiffs do not specifically allege that MB commenced or continued the prosecution of Garner in any way. The Court, therefore, dismisses Count II without prejudice.

### III. Count III - 42 U.S.C. § 1983 Equal Protection - Class of One against the City of Chicago

"Although the standard for a class-of-one equal protection claim . . . currently is unsettled in this circuit, *see Del Marcelle v. Brown Cnty. Corp.*, 680 F.3d 887 (7th Cir.) (en banc) (5–5 division resulting in no controlling opinion), cert. denied, ––– U.S. ––––, 133 S. Ct. 654, 184 L. Ed. 2d 461 (2012), the claim at a minimum would require proof that the [officers] intentionally treated [Plaintiffs] differently from others situated similarly to [them] for no rational reason." *Williamson v. Curran*, 714 F.3d 432, 449 (7th Cir. 2013); *see also Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012) (quoting *Engquist v. Oregon Dept. of Ag.,* 553 U.S. 591, 601, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000)).

Plaintiffs allege the City of Chicago "intentionally treated Plaintiffs differently than others similarly situated" with "no rational basis" and "motivated by an illegitimate animus." (SAC ¶¶ 23-25.) According to Plaintiffs, this treatment – which Plaintiffs do not articulate in Count III – occurred "with sufficient frequency as to constitute an unconstitutional policy and custom." (*Id. ¶* 23.) These allegations are merely threadbare recitals of the elements of a class-of-one Equal Protection claim. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (stating that a court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements."). Such allegations do not "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 570.

Indeed, Plaintiffs do not offer any factual allegations regarding what people are "similarly situated" or specifically how the City of Chicago treated Plaintiffs differently than

7

these people. "To be considered 'similarly situated,' a plaintiff and his comparators (those alleged to have been treated more favorably) must be identical or directly comparable in all material respects." *LaBella Winnetka v. Vill. of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010) (citing *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010)).

Additionally, rather than cite facts from their Second Amended Complaint, Plaintiffs, in their response, argue that their "general allegation" that the City of Chicago treated them differently should be sufficient to state a claim. (Resp. at 6.) To support this argument, Plaintiffs cite to *Geinosky*. (*Id*. at 5-6.) In *Geinosky*, the Seventh Circuit found general allegations sufficient because they concluded that it would be "so simple" to demonstrate different treatment experienced by similarly situated individuals in that case based on the "pattern and nature" of the alleged conduct, which included "twenty-four bogus parking tickets." 675 F.3d at 748. Here, there is no such extensive pattern of conduct which would make it simple to distinguish the City of Chicago's treatment of Plaintiffs from its treatment of others. At most, Plaintiffs have alleged a "long string of harassment" by MB, not by the City of Chicago. Even viewing the pleadings in the light most favorable to Plaintiffs, they have not met the requirements of Rule 8. The Court dismisses Count III without prejudice.

**IV.   Count IV - 42 U.S.C. § 1983 Substantive Due Process Claim against the City of Chicago**

In Count IV, Plaintiffs allege that the City of Chicago "repeatedly harassed Plaintiffs for several years at the behest of MB." (SAC ¶ 28.) According to Plaintiffs, the City of Chicago's "conduct was an egregious arbitrary abuse of government power that shocks the conscience." (*Id*. ¶ 29.) Count IV fails to state a substantive due process claim for several reasons.

8

First, it is unclear what specific repeated harassment or policy or custom Plaintiffs reference in this count. Second, Plaintiffs' conclusory allegations regarding a policy or custom do not sufficiently allege a *Monell* Section 1983 claim. To establish liability against the City of Chicago for a *Monell* claim, Plaintiffs must show that: (1) they suffered a deprivation of a constitutional right, (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policymaking authority, that (3) proximately caused their constitutional injuries. *See Ovadal v. City of Madison*, 416 F.3d 531, 535 (7th Cir. 2005); *see also Obrycka v. City of Chi*., No. 07 C 2372, 2012 WL 601810, at * 6 (N.D. Ill. Feb. 23, 2010). Plaintiffs' Second Amended Complaint does not allege any facts supporting the existence of a policy or custom, nor have they alleged any constitutional right violated by this policy. Instead, Plaintiffs merely state that the City of Chicago "caused plaintiffs to suffer and continue to suffer great emotional and physical anguish, and financial damages." (SAC ¶ 30.)

Third, Plaintiffs cannot rely upon the alleged Fourth Amendment violations they assert in other claims as the basis of a substantive due process Claim. Indeed, the Supreme Court has repeatedly held that where a particular "Amendment provides an explicit textual source of constitutional protection against [a particular sort of government behavior], that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989); *see also U.S. v. Lanier*, 520 U.S. 259, 272 n. 7, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997) ("if a constitutional claim is covered by a specific constitutional provision . . . the claim must be analyzed under [that] standard"). Seventh Circuit law on this issue is similarly clear. *See Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 476 (quoting *Doe v. Heck*, 327 F.3d 492,

9

518 n. 23 (7th Cir. 2003) ("[S]ubstantive due process may not be called upon when a specific constitutional provision . . .protects the right allegedly infringed upon."); *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1017–18 (7th Cir. 2000). Even though the City Defendants noted this deficiency in their motion to dismiss, Plaintiffs did not respond to or counter it in their response brief.

Finally, the scope of substantive due process is very limited and protects plaintiffs only against arbitrary government action that "shocks the conscience." *Montgomery v. Stefaniak*, 410 F.3d 933, 939 (7th Cir. 2005) (quoting *Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir. 2005)); *see also Rochin v. California*, 342 U.S. 165, 172, 72 S. Ct. 205, 96 L. Ed. 2d 183 (1952). "[O]nly the most egregious official conduct is arbitrary in the constitutional sense," and plaintiffs bringing due process claims will be successful only where there is "an extraordinary departure from established norms." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998) (internal quotation marks omitted); *see also Dunn v. Fairfield Cmty. High Sch. Dist. No. 225*, 158 F.3d 962, 966 (7th Cir. 1998)). Plaintiffs have not pled any factual allegations to support their conclusion that the City of Chicago's conduct "shocks the conscience." (SAC ¶ 29.) The Court dismisses Count IV without prejudice.

## V.   Count V - 42 U.S.C. § 1983 Conspiracy to Violate Plaintiffs' Constitutional Rights against All Defendants

Plaintiffs' conspiracy allegations are conclusory and threadbare. Plaintiffs allege that the "City Defendants and MB acted in concert pursuant to [an] agreement to deprive plaintiffs of rights and privileges secured for them under the Constitution." (SAC ¶ 32.) Rather than providing factual allegations to support those conclusions, Plaintiffs merely state that "MB's actions have been in collusion with the city." (*Id*. ¶ 13.) "To establish § 1983 liability through a

conspiracy theory, a plaintiff must demonstrate that: (1) a state official and a private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents." *Lewis v. Mills*, 677 F.3d 324, 333 (7th Cir. 2012). Additionally, in reference to a Section 1983 conspiracy, the Seventh Circuit teaches that:

> [i]t is not sufficient to allege that the (private and state) defendants merely acted in concert or with a common goal. There must be allegations that the defendants had directed themselves toward an unconstitutional action by virtue of a mutual understanding. Even were such allegations to be made, they must further be supported by some factual allegations suggesting such a "meeting of the minds."

*Tarkowski v. Robert Bartlett Realty Co.*, 644 F.2d 1204, 1206 (7th Cir. 1980) (citing *Sparkman v. McFarlin*, 601 F.2d 261, 268 (7th Cir. 1979) (en banc) (concurring opinion of Sprecher, J.)). Here, Plaintiffs have alleged certain conduct by the City Defendants and certain conduct by MB, though they have not provided any factual allegations to link the two Defendants or to demonstrate any type of agreement.

Plaintiffs again misguidedly rely on *Geinosky* to save their claim. (Resp. at 7.) In *Geinosky*, the Seventh Circuit deemed "rather conclusory direct allegations of conspiracy" sufficient because the complaint alleged a pattern of harassment by several officers over a period of time. 675 F.3d 743 at 749-50. The Seventh Circuit stated "[i]t is a challenge to imagine a scenario in which the harassment would not have been the product of a conspiracy," in part because the officers were members of the same policy unit and acted in the "same inexplicable way" on many different occasions. *Id.* By comparison, Plaintiffs' barebones allegations would require some imagination and speculation to conclude that an agreement existed. *See, e.g., Maniscalco v. Simon*, 712 F.3d 1139, 1145 (7th Cir. 2013) ("And although a private person may

11

be liable under § 1983 for conspiring with a state actor to violate the constitutional rights of another, here, as we have explained, the conspiracy theory is entirely speculative."). Additionally, as in Count IV, Plaintiffs also fail to specify the constitutional right which Defendants allegedly violated. Even viewing the facts in the light most favorable to Plaintiffs, therefore, they have not sufficiently pled a conspiracy claim. The Court dismisses Count V without prejudice.

## VI.     Count VI - 42 U.S.C. § 1981 against MB

"Section 1981 prohibits race discrimination in the making and forming of contracts." *Smiley v. Columbia College Chicago,* 714 F.3d 998, 1002 (7th Cir. 2013); *Petrovic v. Enterprise Leasing Co. of Chicago, LLC,* No. 12-3779, 2013 WL 1200220, at *1-2 (7th Cir. Mar. 25, 2013) ("42 U.S.C. § 1981 . . . prohibits private actors from discriminating on the basis of race against those seeking to make and enforce contracts"). Here, Plaintiffs do not allege that MB discriminated against them when they attempted to make or enforce a contract. Rather, Plaintiffs allege that MB harassed Plaintiffs to deprive them of their "rights under § 1981 to *refuse to contract* to sell their home [to MB] . . . on the basis of [Plaintiffs'] race." (SAC ¶ 36 (emphasis added).) Significantly, Plaintiffs offer no legal basis for their alleged right to refuse to contract under Section 1981. Instead, in their response, Plaintiffs change course and argue that their Section 1981 claim is for retaliation. To support their retaliation claim, Plaintiffs rely on *Smith v. Bray*, 681 F.3d 888, 896 (7th Cir. 2012). (Resp. at 8.) *Bray,* however, is factually distinct from the case presented here, in part because *Bray* was a retaliation claim in which the retaliation occurred in the employment context. Furthermore, at most, Plaintiffs allege that MB retaliated against Plaintiffs for refusing to sell their home, yet did not retaliate against white owners who

12

refused to sell their homes. (SAC ¶ 36.) The type of retaliation which Section 1981 targets is "retaliation for opposing discriminatory practices that the statute[] proscribe[s]." *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). Plaintiffs do not allege that they opposed any discriminatory practice. Plaintiffs also provide no legal support for their retaliation claim against MB for their refusal to sell MB their house. The Court dismisses Count VI without prejudice.

## VII.     Count VII - Indemnification against the City of Chicago

Plaintiffs claim that the City of Chicago is liable for any judgments against the Officers pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-102. (SAC ¶¶ 37-38.) Under the Tort Immunity Act:

> [a] local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages (and may pay any associated attorney's fees and costs) for which it or an employee while acting within the scope of his employment is liable in the manner provided in this Article.

745 ILCS 10/9-102. The City Defendants argue that Plaintiffs cannot seek indemnification for their Section 1983 claims because a municipality cannot be held liable for Section 1983 liability under a theory of *respondeat superior*. (City MTD at 14.) This argument improperly conflates indemnification with a substantive claim against the City Defendants based on vicarious liability. Furthermore, the Tort Immunity Act includes Section 1983 liability. *See, e.g., Manning v. Sweitzer,* 891 F .Supp. 2d 961, 970 (N.D. Ill. 2012) (allowing indemnification claim to proceed on Section 1983 unlawful search claim); *see also Sebastian v. City of Chicago,* No. 05 C 2077, 2008 WL 2875255, at *39 (N.D. Ill. July 24, 2008) (finding that the city may be held liable under the Tort Immunity Act for a Section 1983 claim). Significantly, the City of Chicago does not address Count VII in its reply brief. Plaintiffs can seek indemnification from the City of

13

Chicago if the Officers are liable for Count I, and the conduct falls within the ambit of the Tort Immunity Act.

## CONCLUSION

The Court grants Defendants' motions to dismiss in part, and dismisses Counts II-VI without prejudice. Plaintiffs may file a Third Amended Complaint, consistent with this Opinion, on or before August 30, 2013.

**DATED: August 12, 2013**

                                      **ENTERED**

                                      _____
                                      **AMY J. ST. EVE**
                                      **United States District Court Judge**