UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TINA TURNER and
JAMES GARNER,

    Plaintiffs,

    v.

THE CITY OF CHICAGO,
L.H. SALDANA,
T.M. NORRIS, and
MB FINANCIAL BANK,

    Defendants.

No. 12 CV 9994

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

James Garner and Tina Turner (husband and wife) filed suit against the City of Chicago, Chicago police officers L.H. Saldana and T.M. Norris, and MB Financial Bank in December 2012, alleging that MB Financial Bank colluded with the officers and the City of Chicago to have plaintiffs falsely arrested and maliciously prosecuted in retaliation for plaintiffs' refusal to sell their house to MB Financial. Following motions to dismiss and amended pleadings, the only remaining claims from the plaintiffs' third amended complaint are: Turner and Garner's malicious prosecution claim against MB Financial; Turner's false arrest and false imprisonment claim against the City; and Turner's indemnification claim against the City. [61], [80].[1] After plaintiffs' third amended complaint was filed, their counsel withdrew and plaintiffs continued pro se. [105].

---

[1] The bracketed numbers refer to docket numbers on the district court docket.

During discovery, plaintiffs failed to appear for their depositions or provide tangible items and documents ordered to be produced to defendants. *See* [117], [126], [156]. Plaintiffs only provided Rule 26 disclosures. [156]. As a Rule 37 sanction for plaintiffs' decisions not to cooperate in discovery, plaintiffs were precluded from offering any evidence that they had not disclosed in discovery. [156]. The officers, the City, and MB Financial moved for summary judgment on the remaining claims against them. [167], [171]. Plaintiffs were twice granted extensions of time to respond to defendants' motions for summary judgment. [176], [179]. Despite having over three months to prepare their responses, plaintiffs failed to file timely responses and, after the deadline to respond had passed, filed another motion for an extension of time, which was denied for lack of good cause. [182]. Following plaintiffs' failure to file timely responses to the pending motions for summary judgment, the motions were taken under advisement and no further briefing was permitted. *Id.*

For the following reasons, defendants' motions for summary judgment are granted.

**I.     Legal Standard**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014); Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking

summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Under Local Rule 56.1(b)(3)(C), the statements of fact by the moving party will be deemed admitted unless controverted by a statement of the opposing party.

## II. Background

Turner and Garner formerly resided at 5114 South Damen Avenue, directly across an alley from a branch of MB Financial Bank at 5100 South Damen Avenue. [173] ¶¶ 7, 9–11.[2] Bank employees became familiar with Turner and Garner, and since 2007, bank employees observed plaintiffs repeatedly discarding debris onto bank property, damaging bank property, and harassing bank employees and contractors. [173] ¶¶ 12–13; [173-1] at 3–4. The bank's surveillance video cameras were damaged on October 13, 2008, and September 13, 2010. Upon review of the surveillance video of each incident, MB Financial's branch manager, Toribio Acosta, identified Turner as the person damaging the camera. [173] ¶ 21; [173-1] at 3–4.

On December 15, 2010, Chicago police officers Norris and Saldana were on patrol and witnessed Turner throwing newspapers down MB Financial's stairwell. [169] ¶¶ 7, 14–16; [173] ¶¶ 14–16.[3] Officer Norris was already aware that there was an investigative alert stating that a woman by the name of Tina Turner had damaged property owned by MB Financial. [169] ¶ 8. Investigative alerts are issued

---

[2] [173] refers to MB Financial's Local Rule 56.1 undisputed statement of material facts. These facts are deemed admitted because plaintiffs failed to timely oppose defendant's motion.

[3] [169] refers to the officers' and the City's Local Rule 56.1 undisputed statement of material facts, and those facts are deemed admitted because plaintiffs failed to timely oppose defendants' motion.

3

by the City of Chicago Police Department when a complaining witness, victim, police officer, or police detective reports that a crime has been committed and the offender has been identified. *Id.* ¶ 9. Investigative alerts are broadcast to the district in which the offender's last known address is located, and investigative alerts state whether probable cause exists to arrest the offender. *Id.* ¶ 10.

The officers approached Turner to conduct a field interview and name check. Upon checking Turner's name, the officers discovered two active investigative alerts with probable cause to arrest. These investigative alerts pertained to the two incidents where Turner was identified as damaging MB Financial's surveillance cameras. [169] ¶¶ 17–20; [173] ¶¶ 17–19. The officers arrested Turner for criminal damage to property based on the alerts. [169] ¶¶ 21–22; [173] ¶ 20. On December 16, 2010, the branch manager, Acosta, signed two criminal complaints against Turner for damaging the bank's surveillance videos. [169] ¶ 23. That same day, Turner was released from police custody on her own recognizance. *Id.* ¶ 24. On August 24, 2011, the Cook County State's Attorney dismissed the case against Turner with leave to reinstate. [173] ¶ 22.

On March 22, 2011, Acosta witnessed Garner spraying a liquid substance on Adali Guzman, who worked as a cleaning person for the bank. From the smell, Acosta believed the liquid was urine. [173] ¶¶ 23, 25; [173-1] at 4. Two days later, a criminal complaint for battery was filed against Garner for throwing garbage at and spraying urine on Guzman. [173] ¶ 24. On June 28, 2012, the Cook County State's Attorney dismissed the case against Garner with leave to reinstate. *Id.* ¶ 26.

## III. Malicious Prosecution

In their third amended complaint, plaintiffs alleged that there was an absence of probable cause to commence and continue the criminal proceedings against them because Turner was not guilty of damaging MB Financial's video cameras and Garner was not guilty of battery against Guzman, and that this was confirmed by "video evidence." [61] ¶¶ 20–21. Plaintiffs also alleged that MB Financial maliciously instituted criminal proceedings in retaliation for plaintiffs' refusal to sell their house. *Id.*[4] MB Financial argues it is entitled to summary judgment because probable cause existed for its employees to pursue criminal proceedings against plaintiffs and because plaintiffs have no evidence to establish malice or damages.

Malicious prosecution suits "are disfavored by law because of the potential deterrent effect on the reporting of crime." *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 921 (7th Cir. 2001) (citing *Joiner v. Benton Cmty. Bank*, 82 Ill.2d 40, 44 (1980)). To prevail on a malicious prosecution claim under Illinois law, a plaintiff must establish: (1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the

---

[4] Supplemental jurisdiction under 28 U.S.C. § 1367 was retained over plaintiffs' state-law malicious prosecution claim. The malicious prosecution claim shared "a common nucleus of operative facts," *Bailey v. City of Chicago*, 779 F.3d 689, 696 (7th Cir. 2015), with plaintiffs' Fourteenth Amendment equal protection and § 1983 conspiracy claims—which were eventually dismissed ([80])—and with Turner's remaining § 1983 false arrest claim. These claims all focused on the same circumstances of MB Financial's alleged retaliation against plaintiffs for their refusal to sell their house, Turner's arrest, and MB Financial employees' criminal complaints against plaintiffs. *See, e.g., Bailey*, 779 F.3d at 696 (federal false arrest claim based on same facts as state-law claim for malicious prosecution).

presence of malice; and (5) damages. *Id.* at 921–22 (citing *Swick v. Liautaud*, 169 Ill.2d 504, 512 (1996)).

### A. Probable Cause

"Illinois law recognizes that the existence of probable cause serves as a complete defense to a malicious prosecution claim." *Bailey v. City of Chicago*, 779 F.3d 689, 697 (7th Cir. 2015) (citing *Johnson v. Target Stores, Inc.*, 341 Ill.App.3d 56, 73 (1st Dist. 2003)). "Probable cause is defined as 'a state of facts . . . that would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged.'" *Logan*, 246 F.3d at 926 (quoting in part *Adams v. Sussman & Hertzberg, Ltd.*, 292 Ill.App.3d 30, 43 (1st Dist. 1997)). "When there is an honest belief by the complainant that the accused is probably guilty of the offense, a mistake or error that is not grossly negligent will not affect the question of probable cause." *Sang Ken Kim v. City of Chicago*, 368 Ill.App.3d 648, 654–55 (1st Dist. 2006). "A reasonable ground for belief of an accused's guilt may be on information from other persons as well as on personal knowledge." *Id.* at 655. "The complainant is not required to verify the correctness of each item of information obtained; it is sufficient to act with reasonable prudence and caution." *Id.*

Here, there was probable cause for MB Financial to institute criminal proceedings against Turner.[5] Since 2007, the bank's branch manager, Acosta, was

---

[5] MB Financial does not dispute that its branch manager signed the two criminal complaints against Turner ([169] ¶ 23), effectively initiating the criminal proceedings against her. For malicious prosecution under Illinois law, "[l]egal causation will be attributed to a private citizen only if the plaintiff can demonstrate that the defendant (1)

6

familiar with Turner and had observed her placing debris on the bank's property and damaging the bank's property. [173] ¶¶ 12–13. MB Financial had surveillance video for two separate incidents when its video cameras were damaged. *Id*. ¶¶ 8, 19, 21. After observing each video, Acosta identified Turner as the person who damaged the bank's cameras. *Id*. ¶ 21. Acosta's identification of Turner on the surveillance video was sufficient evidence for MB Financial to reasonably believe that Turner had committed the offenses. "[A] complaint of the putative victim or single witness is generally sufficient to establish probable cause, unless the officer has a reason to question the witness' account." *Reynolds v. Jamison*, 488 F.3d 756, 765 (7th Cir. 2007); *see also Hart v. Mannina*, 798 F.3d 578, 587 (7th Cir. 2015) ("Probable cause can be based on a single identification from a credible eyewitness."); *Bailey*, 779 F.3d at 694–95 (officers had probable cause for arrest where witnesses familiar with plaintiff identified him on surveillance video).

Similarly, there was probable cause for Guzman to sign a complaint against Garner. Acosta, who had been familiar with Garner for years, witnessed first-hand Garner spraying urine on Guzman. [173] ¶¶ 13, 25. *See Reynolds*, 488 F.3d at 765; *Hart*, 798 F.3d at 587; *Bailey*, 779 F.3d at 694–95. This eyewitness identification

---

instituted the proceedings against the plaintiff; (2) knowingly made false statements to the police; or (3) requested, directed, or pressured the officer into swearing out the complaint for the plaintiff's arrest." *Logan*, 246 F.3d at 922. Normally, a private citizen institutes a criminal judicial proceeding by filing a complaint. *Id*. The complaint against Garner, however, was signed by Guzman (a cleaning person at the bank) for battery against her personally. MB Financial does not address whether Guzman's criminal complaint can be similarly attributed to MB Financial to establish legal causation for a malicious prosecution claim. However, even if Guzman's complaint can be attributed to MB Financial, Garner cannot establish the other elements for a malicious prosecution claim against MB Financial.

7

from a witness familiar with Garner was sufficient to establish probable cause that Garner was responsible for the battery against Guzman.

    **B.**    **Malice**

Because MB Financial had probable cause for pursuing criminal proceedings against Turner and Garner, "malice cannot be inferred." *Reynolds v. Menard, Inc.*, 365 Ill.App.3d 812, 822 (1st Dist. 2006). Plaintiffs' alleged theory was that MB Financial acted maliciously in retaliation for plaintiffs' refusal to sell their house to MB Financial in 2004. [61] ¶ 12. However, based on the undisputed facts, MB Financial did not hold any interest in the loan on plaintiffs' home, did not foreclose on the property, never sought to purchase the home, and was not involved in eviction proceedings against plaintiffs. [173] ¶¶ 27–32. In the absence of any evidence showing malice, plaintiffs cannot establish malicious prosecution.

    **C.**    **Damages**

MB Financial also argues that the plaintiffs have no evidence of damages, and therefore cannot establish yet another element of malicious prosecution. During discovery, the plaintiffs failed to produce any information on damages, other than Rule 26 disclosures which generally identified the categories of damages sought by plaintiffs: "Compenstory [sic] and pain/suffering damages, and attorney's fees" and "Nominal damages (civil rights violations) (if applicable), punitive damages and attorney's fees." [173-1] at 53. Under Illinois law that applies to this claim, "[t]he burden rests on the party seeking to recover to establish that he sustained damages and to establish a reasonable basis for the computation of those damages." *Sharon Leasing, Inc. v. Phil Terese Transp., Ltd.*, 299 Ill.App.3d 348, 356 (2d Dist. 1998).

8

Damages evidence "cannot be remote, speculative, or uncertain." *Dowd & Dowd, Ltd. v. Gleason*, 352 Ill.App.3d 365, 383–84 (1st Dist. 2004). Without any evidence, plaintiffs cannot establish damages tied to the malicious prosecution claim.

Summary judgment is granted for MB Financial on plaintiffs' malicious prosecution claim.[6]

## IV. False Arrest and False Imprisonment

In plaintiffs' third amended complaint, Turner alleged that she was arrested by defendants Norris and Saldana without probable cause and then detained for eight hours before appearing in court. [61] ¶ 15.[7] The officers argue that Turner's arrest was supported by probable cause, barring her false arrest claim, and that the officers are entitled to qualified immunity.

To prevail on a cause of action for false arrest and imprisonment,[8] a plaintiff must show that probable cause for her arrest was lacking. *Williams v. Rodriguez*,

---

[6] Additionally, although not argued by MB Financial, plaintiffs cannot show that the state's criminal cases against them terminated in their favor. "A criminal case terminates in an accused's favor when the circumstances surrounding dismissal reflect innocence." *Penn v. Harris*, 296 F.3d 573, 577 (7th Cir. 2002) (citing *Cult Awareness Network v. Church of Scientology Int'l,* 177 Ill.2d 267, 226 (1997)). The Cook County State's Attorney dismissed the cases against Turner and Garner, respectively, with leave to reinstate. [173] ¶¶ 22, 26. A plaintiff "bears the burden of showing that the circumstances surrounding the dismissal with leave to reinstate are indicative of his innocence." *Penn*, 296 F.3d at 577 (citing *Swick*, 169 Ill.2d at 513). Turner and Garner cannot submit any evidence to that effect, and therefore MB Financial is entitled to summary judgment on this ground as well. *See id.* (defendants entitled to summary judgment where plaintiff submitted no evidence showing that circumstances surrounding dismissal with leave to reinstate were indicative of innocence).

[7] There is federal question jurisdiction over Turner's false arrest claim brought under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments. 28 U.S.C. § 1331.

[8] Turner's claim alleges false arrest and false imprisonment. These are treated as the same claim. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("False arrest and false imprisonment

9

509 F.3d 392, 398 (7th Cir. 2007). "Probable cause to justify an arrest exists if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013). "The existence of probable cause to arrest is an absolute defense to any § 1983 claim against a police officer for false arrest or false imprisonment." *Id.* at 713–14.

Defendants Norris and Saldana had probable cause to arrest Turner. They witnessed her throwing newspapers down MB Financial's stairwell. [169] ¶¶ 7, 14–16; [173] ¶¶ 14–16. At that time, Officer Norris was already aware that there was an investigative alert stating that a woman by the name of Tina Turner had damaged property owned by MB Financial. [169] ¶ 8. The officers approached Turner, and, upon checking her name, discovered two active investigative alerts identifying Turner as having damaged MB Financial's surveillance cameras and stating that there was probable cause to arrest her. [169] ¶¶ 17–20; [173] ¶¶ 17–19. The officers arrested Turner for criminal damage to property based on the alerts. [169] ¶¶ 21–22; [173] ¶ 20.

Under the doctrine of collective knowledge, what was known to other Chicago police officers was deemed to be known by defendants Norris and Saldana. "The collective knowledge doctrine permits an officer to stop, search, or arrest a suspect

---

overlap; the former is a species of the latter."); *Serino v. Hensley*, 735 F.3d 588, 590 n.1 (7th Cir. 2013).

at the direction of another officer or police agency, even if the officer himself does not have firsthand knowledge of facts that amount to the necessary level of suspicion to permit the given action." *United States v. Williams*, 627 F.3d 247, 252 (7th Cir. 2010) (citing *United States v. Hensley*, 469 U.S. 221, 232–33 (1985)). And the police department had probable cause to issue the investigative alerts because Acosta, a witness familiar with Turner, had reviewed the surveillance videos and identified her as the individual who had damaged MB Financial's property on two separate occasions. "When police officers obtain information from an eyewitness or victim establishing the elements of a crime, the information is almost always sufficient to provide probable cause for an arrest in the absence of evidence that the information, or the person providing it, is not credible." *Pasiewicz v. Lake Cty. Forest Pres. Dist.*, 270 F.3d 520, 524 (7th Cir. 2001). Through the investigative alerts for Turner, the officers had probable cause to arrest her for the vandalism of MB Financial's video cameras. *See, e.g., Banks v. Fuentes*, 545 Fed. App'x 518, 521 (7th Cir. 2013) ("Like a warrant, the investigative alert authorized [plaintiff's] arrest because other officers already had made a determination of probable cause.").

Defendants Norris and Saldana are also entitled to qualified immunity for their reliance on the investigative alerts. Under the arguable probable cause doctrine, "a defendant is entitled to qualified immunity in a false-arrest case when, if there is no probable cause, 'a reasonable officer could have mistakenly believed that probable cause existed.'" *Fleming v. Livingston Cty., Ill.*, 674 F.3d 874, 880 (7th Cir. 2012) (quoting in part *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998)).

After observing Turner littering on MB Financial's property and receiving two investigative alerts under her name—alerts which stated there was probable cause to arrest her for damaging MB Financial's surveillance cameras—it was reasonable for Officers Norris and Saldana to believe that they had probable cause to arrest Turner for damaging the bank's cameras.

For these reasons, defendants' motion for summary judgment on Turner's false arrest and false imprisonment claim is granted.

## V. Indemnification

The City argues that Turner's indemnification claim should be dismissed under the Illinois Tort Immunity Act. Under the Act, "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109. Because defendants Norris and Saldana have been granted summary judgment on Turner's remaining claim against them, the City is entitled to summary judgment on her indemnification claim. *See Fleming*, 674 F.3d at 881 (under 745 ILCS 10/2-109, sheriff and county entitled to summary judgment on indemnification claims where officer had probable cause and was entitled to qualified immunity).

## VI. Conclusion

Defendants' motions for summary judgment, [167] and [171], are granted. Enter judgment in favor of defendants and terminate civil case.[9]

ENTER:

                                                           /s/ Manish S. Shah
                                                           Manish S. Shah
                                                           United States District Judge

Date: 11/25/2015

---

[9] This is a final decision ending plaintiffs' case in this court. If plaintiffs wish to appeal, they must file a notice of appeal with the district court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(1). Plaintiffs may file an appeal without asking this court to reconsider its earlier decisions. However, if they wish this court to reconsider its judgment, they may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. Fed. R. Civ. P. 59(e). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. Fed. R. Civ. P. 60(c)(1). The time to file a Rule 59(e) or Rule 60(b) motion cannot be extended. Fed. R. Civ. P. 6(b)(2). A Rule 59(e) or Rule 60(b) motion suspends the deadline for filing an appeal until the ruling on the motion, but only if the motion is filed within 28 days of the entry of judgment. Fed. R. App. P. 4(a)(4)(A)(iv) and (vi).